# In The United States Court of Federal Claims

Nos. 15-207C, 15-242C, 15-249C and 15-265C

(Filed Under Seal: April 14, 2015)

Reissued: April 22, 2015[1]

COAST PROFESSIONAL, INC.,
NATIONAL RECOVERIES, INC.
ENTERPRISE RECOVERY SYS., INC,
PIONEER CREDIT RECOVERY, INC.,

Plaintiffs,

v.

THE UNITED STATES,

Defendant,

and

FINANCIAL MANAGEMENT SYS. INC.,
ACCOUNT CONTROL TECH., INC.
CONTINENTAL SERVICE GROUP, INC.
WINDHAM PROFESSIONALS, INC.
GC SERVICES LIMITED PARTNERSHIP

Defendant-Intervenors.

Contracts; Pre-award bid protest; Jurisdiction – 28 U.S.C. § 1491(b)(1); Contract Disputes Act – contract administration outside of court's bid protest jurisdiction; Task orders; No limitation regarding competitive range and associated Federal Acquisition Regulation (FAR) concepts; Down-select – no winnowing of contractors; No jurisdiction; Case dismissed for lack of jurisdiction.

## OPINION

*Megan Carey Connor*, PilieroMazza, PLLC, Washington, D.C., for Coast Professional, Inc.; *Edward Thomas DeLisle*, Cohen, Seglias, Philadelphia, PA, for National Recoveries, Inc.; *Daniel R. Forman*, Crowell & Moring, LLP, Washington, D.C., for Enterprise Recovery

[1] An unredacted version of this opinion was issued under seal on April 14, 2015. The parties were given an opportunity to propose redactions and those redactions are represented by brackets [ ]. In addition, the court has incorporated some minor changes into this opinion.

Systems, Inc.; and *Jonathan D. Shaffer*, Smith Pachter McWhorter, PLC, Tysons Corner, VA, for Pioneer Credit Recovery, Inc., for plaintiffs.

*Michael Damien Snyder*, Civil Division, United States Department of Justice, Washington, D.C., with whom was Acting Assistant Attorney General *Benjamin C. Mizer*, Civil Division, for defendant.

*Jason Alan Levine*, Vinson & Elkins, L.L.P., Washington, D.C., for Financial Management Systems, Inc.; *Benjamin G. Chew*, Manatt, Phelps & Phillips, Washington, D.C., for Account Control Technology, Inc.; *Edward Hulvey Meyers*, Stein, Mitchell, Muse, Cipollone & Beato, LLP, Washington, D.C., for Continental Service Group, Inc.; *David Thomas Ralston, Jr.*, Foley & Lardner, LLP, Washington, D.C., for Windham Professionals, Inc.; and *Stephen Emory Ruscus*, Morgan, Lewis & Bockius, LLP, Washington, D.C., for GC Services Limited Partnership, for defendant-intervenors.

*Paul Mark Honigberg*, Blank Rome, LLP, Washington, D.C. for West Asset Management, Inc.; and *Jeffery Mitchell Chiow*, Rogers Joseph O'Donnell, PC, Washington, D.C, for The CBE Group, Inc., for *amici curiae*.

**ALLEGRA, Judge:**

This putative bid protest contract case is before the court on plaintiffs' motions for preliminary injunction. After careful consideration of the briefs filed by the parties, the oral argument, and for the reasons discussed below, the court hereby finds that it lacks jurisdiction over plaintiffs' claims under 28 U.S.C. § 1491(b)(1). The court accordingly hereby **DISMISSES** plaintiffs' complaints.

## I. BACKGROUND[2]

The Department of Education (Education), Office of Federal Student Aid (FSA), administers student financial aid programs authorized under Title IV of the Higher Education Act of 1965, 79 Stat. 1219, as amended. *See generally*, *Lockhart v. United States*, 546 U.S. 142, 144 (2005). When a student loan borrower is unable or otherwise fails to make payments on his or her student loan, Education identifies the loan as in default. Since 1981, Education has contracted for the services of private collection agencies (PCAs) to support collection and administrative resolution activities on defaulted loans.

Education contracts with PCAs through the General Services Administration (GSA), Federal Supply Service's Financial and Business Solutions (FABS) Schedule. On May 29, 2008, Education issued a Request for Proposals (RFP), Solicitation No. ED-08-R-0052, seeking to issue task orders (TOs) to contractors under Special Item Number 520-4 of the contractors'

[2] Owing to the urgent need of the parties for a ruling in this matter, the court's recitation of the facts and law is necessarily brief.

existing GSA Schedule contracts.[3] The RFP was intended to procure PCA services to "[p]rovide facilities, equipment and perform actions necessary for large-scale nationwide collection of Federal Government debts," and particularly "[l]ocate and contact borrowers to demand payment of their debts to the Federal Government, or otherwise resolve their debt." The RFP set a fixed pricing schedule, under which the contractors would earn commission on payments made by borrowers or for resolving the debts through other methods. The RFP specified that "this competition is being conducted in accordance with Federal Acquisition Regulation (FAR) Subpart 8.4, Federal Supply Schedules, and GSA ordering requirements applicable to services purchased under SIN 520-4 of the FABS Schedule."

The RFP explained that the TOs would include one two-year base term and several optional ordering periods. Section H.1 of the RFP, incorporating FAR 52.217-9, allowed Education to exercise multiple option periods of up to two years, as long as the total duration of the period of performance under the TO "including the exercise of any options under this clause, shall not exceed 60 months from the date of contract award, excluding any award term(s) earned." Section H.3, incorporating FAR 52.217-8, allowed Education to exercise option periods that, in total, could extend performance under the TOs for an additional six months. Section H.4 of the RFP, entitled "Award Term Extension" provided:

> the Contractor may earn performance extensions (hereinafter called "award terms"), based upon the quality of performance during the evaluation periods. If the Contractor has an average [Contractor Performance and Continuous Surveillance (CPCS)] rating of 75 or greater over the life of the Task Order, or the last 12 CPCS periods (whichever is shorter), the Government may, award the Contractor an award-term extension in accordance with the terms of this clause in recognition of the Contractor's excellent or better quality performance.

The award terms also were subject to the following conditions: "i. Funds are available; ii. The requirement covered by the award-term fulfills an existing Government need; [and] iii. The contractor accepts the Government's target pricing and terms."[4]

Section H.4 stated that "[a]ny award-term extension under this clause will be executed in the form of a new task order issued by the Contracting Officer [CO] under the Contractor's then current GSA schedule contract." The extensions would be subject to the terms, conditions, and target pricing of the original TOs. In order to award an award-term extension, the CO was required to provide written notice to the contractors at least 60 days before the TO expired, indicating the government's intent to issue an award-term extension. This notice would not commit the government to the extension.

---

[3] On November 17, 2008, Education amended the RFP. The amendments did not materially change the provisions of the RFP that are relevant in this case.

[4] Section H.4 in the TOs was later modified to require an average CPCS rating of 85 or greater in order for a contractor to be considered for an award-term extension.

In July 2009, Education awarded identical TOs to twenty-two contractors that had submitted proposals in response to the RFP. These contractors were divided into two pools – a small business pool and an unrestricted pool.[5] Those pools were broken, as follows:

| **2009 Task Order Awardees** | |
|---|---|
| **Small Business Pool** | |
| Coast Professional, Inc. (Coast) | Collection Technology, Inc. |
| National Recoveries, Inc. (NRI) | Immediate Credit Recovery, Inc. |
| Delta Management Associates, Inc. | |
| **Unrestricted Pool** | |
| Account Control Technology, Inc. (ACT) | The CBE Group, Inc. (CBE) |
| Continental Service Group, Inc. (ConServe) | Allied Interstate, Inc. |
| Enterprise Recovery Systems, Inc. (ERS) | EOS CCA |
| Financial Management Systems, Inc. (FMS) | Financial Asset Management Systems, Inc. (FAMS) |
| GC Services LP (GC Services) | NCO Financial Systems, Inc. |
| Pioneer Credit Recovery, Inc. (Pioneer) | Performant Recovery |
| Windham Professionals, Inc. (Windham) | Premier Credit of North America, LLC |
| West Asset Management, Inc. (West) | Progressive Financial Services, Inc. |
| Van Ru Credit Corporation | |

The TOs provided for in-depth evaluations of the contractors' performance throughout the life of the TOs through the use of CPCS ratings. Within several months of the placement of accounts with the PCAs, and quarterly after that, Education was required to calculate CPCS ratings for each contractor. In calculating these ratings, the small business and unrestricted pools were assessed separately. CPCS scores were calculated according to detailed provisions in the TOs, which required the government to take into account three performance indicators. The contractor with the highest ranking in each performance indicator received the total potential points for that indicator. The points assigned to the remaining contractors reflected "the relative percentage each contractor is behind the lead contractor" for each indicator.

To reward higher CPCS scores, Education gave out bonus payments and transferred a greater volume of accounts to the high-scoring contractors. A CPCS score of 85 or more also qualified the contractor for an award term extension pursuant to Section H.4 of the TOs. The TOs indicated that a CPCS score above 95 was an indicator of "Outstanding performance" and a score from 85 to 95 was an indicator of "Excellent performance." The TOs noted that while these adjectival ratings "serve as convenient groupings and references," the government "may consider other factors including, but not limited to: complaints, small business subcontracting,

[5] The small business pool consisted of any concern with 500 or fewer employees and annual receipts of $6.5 million or less, "that is independently owned and operated, [and] not dominant in the field of operation in which it is bidding on Government contracts." All other contractors were in the unrestricted pool.

security risks or violations, computer system inadequacies, or deficiencies in procedures, quality control or training."

The TOs required contractors to comply with all applicable state and federal laws, and stated that "[f]ailure to do so may result in immediate punitive measures and/or termination of the Task Order." Section H.10 further stated that the government "reserves the right to recall all accounts and cancel the Task Order if the Contracting Officer determines that the Contractor has performed poorly or fails to perform under the terms of the order . . . . [A] finish within the PCS performance range[6] does not preclude cancellation of a Task Order for poor performance."

After the base period for the TOs ended, Education extended each of the TOs repeatedly, pursuant to the option provisions in Sections H.1 and H.3. Nineteen of the twenty-two TOs were extended through April 21, 2015. The other three TOs – belonging to Pioneer, FAMS, and CBE – were extended through February 21, 2015.

In March of 2014, the Government Accountability Office (GAO) submitted a report to Congress entitled "Federal Student Loans: Better Oversight Could Improve Defaulted Loan Rehabilitation." *See* U.S. Gov't Accountability Office, GAO-14-256, Federal Student Loans: Better Oversight Could Improve Defaulted Loan Rehabilitation (2014). The report focused on loan rehabilitation, which is one repayment option for borrowers whose student loans are in default. The GAO found that Education conducted limited oversight of the twenty-two PCAs operating under the TOs, and "[a]s a result, it may be difficult for [Education] to ensure that borrowers receive accurate information regarding loan rehabilitation." The GAO recommended that Education "improve oversight of its . . . collection agencies." Education agreed with the GAO's recommendations.

In December of 2014, FSA began conducting audits of all twenty-two PCAs to determine if they had provided misinformation to borrowers in violation of two specific provisions of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692, and the Unfair, Deceptive, or Abusive Acts or Practices (UDAAP), 12 U.S.C. § 5536. These audits ("the FDCPA audits") took approximately six to eight weeks to complete and were based on guidance FSA received from the Consumer Financial Protection Bureau. The PCAs were not informed that the FDCPA audits were occurring.

To conduct the FDCPA audits, thirty-five FSA reviewers listened to recordings of roughly one hundred phone calls from each of the PCAs and marked on a spreadsheet whenever the reviewer thought that the PCAs' representatives violated the FDCPA/UDAAP. FSA then calculated the "error rate" for each PCA by adding up the number of calls that contained at least one violation. FSA found the following error rates for the parties in this case:

---

[6] The original TOs defined the CPCS performance range as scoring 55 points or more on an individual CPCS. In 2011, the TOs were modified to define the CPCS performance range as a score of 65 points or more.

| **FDCPA Audit Results** | **Error Rate** |
|---|---|
| Coast | [] |
| NRI | [] |
| ERS | [] |
| Pioneer | [] |
| FMS | [] |
| ACT | [] |
| ConServe | [] |
| Windham | [] |
| GC Services | [] |

In early February 2015, Education determined which contractors were eligible for an award-term extension pursuant to Section H.4. Nine contractors had an average CPCS rating of 85 or higher during the last twelve quarters of the TO: FMS, Windham, ConServe, Pioneer, ACT, ERS, GC Services, Coast and NRI.

On February 19, 2015, FSA made the final determination that five PCAs had exceeded a threshold error rate on the FDCPA audit: Coast, NRI, ERS, Pioneer, and West. FSA determined that these five contractors, regardless of their CPCS scores, would not be given an award-term extension and their TOs would be allowed to expire.

On February 20, 2015, the CO on the TOs contacted each of the plaintiffs and informed them that they would not be receiving an award-term extension. Through discussions with the CO and other Education officials over the next few days, the plaintiffs each learned that they were not being given an award-term extension because an audit had uncovered violations of the FDCPA/UDAAP. The specific calls that were reviewed during the FDCPA audit and the results were not disclosed to any of the plaintiffs.

On February 21, 2015, Education issued a notice of its intention to award five contractors with award-term extensions: FMS, ConServe, ACT, Windham, and GC Services. The notification stated that "[i]f the contract is extended pursuant to Section H.4, it will be accomplished via a contracting action, which will specifically identify all of the terms and conditions of the award term extension." Education has not yet issued the award-term extensions.

On February 24, 2015, FSA's Executive Business Advisor sent an email to all twenty-two PCAs providing more information about the FDCPA audit. The email stated:

> This is to notify you that FSA found violations that included:
>
> - Credit Reporting – The review found instances of misrepresentation regarding credit reporting, in which collectors misled consumers to believe that rehabilitating loans under [Education's] rehabilitation program would remove all evidence of delinquency on the consumer's credit report, when,

in fact, information regarding the consumer's initial delinquency is not removed.

- Fees Waived – The review found instances of misrepresentations regarding the waiver of collection fees, in which collectors misled consumers to believe that all collection costs would be waived when a student loan was rehabilitated, when, in fact, only the costs remaining after the program's completion are waived.

On February 27, 2015, Education issued a press release announcing its intention to end contracts with the five PCAs that exceeded the threshold error rate on the FDCPA audit.

On March 2, 2015, Coast filed a complaint in this court challenging Education's award of the award-term extensions, and requesting a temporary restraining order, preliminary injunction and permanent injunction. On March 9 and 10, 2015, respectively, NRI and ERS each filed complaints in this court challenging the same alleged award. On March 11, 2015, the court consolidated the cases brought by NRI and ERS with that of Coast. Between March 4, 2015, and March 16, 2015, the five contractors who received award-term extensions – FMS, ACT, ConServe, Windham, and GC Services – filed motions to intervene in this case and were promptly admitted as defendant-intervenors.

On March 16, 2015, Pioneer filed a complaint in this court.[7] The same day, the court consolidated Pioneer's complaint with this case. On March 18, 2015, the four plaintiffs filed renewed motions for a preliminary injunction. On March 18 and 19, 2015, respectively, West and CBE filed complaints in this court in cases Nos. 15-281 and 15-290. On March 19, 2015, the court admitted West and CBE as *amici curiae* in this case and allowed each of them to file an *amicus* brief. Briefing on the renewed motions for a preliminary injunction has been completed. Oral argument was held in this case on April 8, 2015.

## II. DISCUSSION

Deciding a motion to dismiss "starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed." *Holley v. United States*, 124 F.3d 1462, 1465 (Fed. Cir. 1997); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554-55 (2007); *Hallmark-Phoenix 3, LLC v. United States*, 99 Fed. Cl. 65, 67 (2011). In particular, the plaintiffs must establish that the court has subject matter jurisdiction over their claims. *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988); *McVey Co., Inc. v. United States*, 111 Fed. Cl. 387, 405 (2013).[8] Here, defendant and

---

[7] On March 2, 2015, Pioneer filed a bid protest at the GAO relating to the award-term extensions. On March 13, 2015, the GAO dismissed Pioneer's complaint pursuant to 4 C.F.R. § 21.11(b) because of the cases filed in this court challenging the same alleged procurement.

[8] Where there are "serious questions" regarding subject matter jurisdiction, the appropriate approach is not to focus on the questions in a motion for preliminary injunction, but

defendant-intervenors asseverate that jurisdiction is lacking because, *inter alia*, plaintiffs' claims raise questions of contract administration not properly considered in a bid protest context. *See* Contract Disputes Act of 1978 (CDA), 41 U.S.C. §§ 7101-09; *see generally*, Francis M. Allegra & Daniel B. Garrie, "Plugged In: Guidebook to Software and the Law," § 11:2 (2015).

The United States, of course, "is immune from suit save as it consents to be sued." *United States v. Sherwood*, 312 U.S. 584, 586 (1941); *see also Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 498 (2006); *Hercules, Inc. v. United States*, 516 U.S. 417, 422 (1996). As such, this court is required to dismiss a complaint in cases where it finds that it lacks subject matter jurisdiction. RCFC 12(h)(3); *Smith v. United States*, 495 Fed. Appx. 44, 47 (Fed. Cir. 2012), *cert. denied*, 133 S. Ct. 1288 (2013) ("If the Court of Federal Claims determines at any time that it lacks subject matter jurisdiction, it must dismiss the action."); *Trailboss Enters. Inc. v. United States*, 111 Fed. Cl. 338, 340 (2013); *see also Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006). Section 1491(b)(1) grants this court "jurisdiction to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1); *see RAMCOR Serv. Group, Inc. v. United States*, 185 F.3d 1286, 1289 (Fed. Cir. 1999).

Despite the arguably broad language of this subsection, "the Federal Circuit has made it crystal clear" that matters of contract administration are beyond this court's bid protest jurisdiction. *Gov't Technical Servs., LLC v. United States*, 90 Fed. Cl. 522, 527 (2009).[9] The CDA, rather, is the "exclusive mechanism" to resolve disputes of this sort. *Dalton v. Sherwood Van Lines, Inc.*, 50 F.3d 1014, 1017 (Fed. Cir. 1995); *see also Wildflower Intern., Ltd. v. United States*, 105 Fed. Cl. 362, 383 (2012); *Harris Patriot Healthcare Solutions, LLC v. United States*, 95 Fed. Cl. 585, 594-95 (2010). Thus, for example, this court has held that it does not possess jurisdiction pursuant to section 1491 to enjoin a contracting agency's termination of a contract, *Data Monitor Sys., Inc. v. United States*, 74 Fed. Cl. 66, 71-72 (2006), and that a government failure to exercise an option raises issues of contract administration outside the court's bid protest jurisdiction, *Jones Automation*, 92 Fed. Cl. at 371-72. As recently adumbrated by Judge Wolski –

> when a party brings a challenge in our court to an agency action which affects that party because it is a contractor and not because it is (or might be) an offeror, the only vehicle it may use is the CDA. Although most federal contractors were at

---

instead to view the issues as appropriately considered via a motion to dismiss for lack of jurisdiction. *Jones Automation, Inc. v. United States*, 92 Fed. Cl. 368, 371-72 (2010); *see also Int'l Genomics Consortium v. United States*, 104 Fed. Cl. 669, 673 (2012).

[9] *See, e.g.*, *Distributed Solutions, Inc. v. United States*, 539 F.3d 1340, 1346 (Fed. Cir. 2008); *Kellogg Brown & Root Servs., Inc. v. United States*, 117 Fed. Cl. 764, 769 (2014); *Outdoor Venture Corp. v. United States*, 100 Fed. Cl. 146, 152 (2011); *Chapman Law Firm v. United States*, 63 Fed. Cl. 519, 529-30 (2005), *aff'd*, 163 Fed. Appx. 889 (Fed. Cir. 2006); *CCL, Inc. v. United States*, 39 Fed. Cl. 780, 788 (1997).

> one point offerors for the contracts they received, once the contracts are awarded their interests in disputes with the government are those of contractors, not offerors.

*Kellogg Brown & Root Servs.*, 117 Fed. Cl. at 769; *see also Gov't Tech. Servs.*, 90 Fed. Cl. at 526 (holding that defendant's failure to exercise an option is governed by the CDA, 41 U.S.C. § 601-31 [now codified at 41 U.S.C. § 7101 *et. seq.*], and is not a bid protest); *Am. Consulting Servs., Inc.*, 97–2 C.P.D. ¶ 37 (1997) ("agency's decision whether to exercise an option is a matter of contract administration outside the scope of our bid protest function.").[10]

So are the cases in question ones involving contract administration or are they, instead, appropriately viewed as bid protests? In the court's view, the former is demonstrably the case for several reasons. These cases arose from, and reflect, the agency's exercise of its discretion, limited primarily, if not exclusively, by the express terms in the original 2009 task orders, especially Clause H.4, thereof. The award-term extensions added more work to the existing contract only in the context of those task order provisions – but nothing more. There is no change in scope either measured by the law or the procedures set forth in the contract so as to trigger this court's jurisdiction. *See AT&T Commc'ns, Inc. v. Wiltel, Inc.*, 1 F.3d 1201, 1205 (Fed. Cir. 1993); *CI², Inc.*, 11-2 B.C.A. ¶ 34823 (2011); *cf. Magnum Opus Techs., Inc. v. United States*, 94 Fed. Cl. 512, 522 (2010).[11] Consistent with the cases cited above, claims like those made by plaintiffs may only be brought under the CDA, subject to the limitations associated with that statute.

To otherwise treat the award-term extensions as new contracts elevates form over substance, essentially creating a potential flock of claims unenvisioned by this court's bid protest jurisdiction. *See Jones Automation*, 92 Fed. Cl. at 371-72; *Gov't Tech. Servs.*, 90 Fed. Cl. at 526. The same can be said of plaintiffs' claims to invoke the Competition in Contracting Act (CICA), 10 U.S.C. § 2304, as modified by other applicable procurement statutes. These statutes afford plaintiffs no relief, under the circumstances available. In the court's view, as emphasized in the oral argument of this case, plaintiffs' view of the court's jurisdiction "would unlock a veritable Pandora's box of bid protest challenges to many internal agency decisions that never ripen into

---

[10] For similar rulings involving efforts to enjoin the termination of a contract, *see Data Monitor Sys.*, 74 Fed. Cl. at 71-72 (holding that this court lacked jurisdiction to enjoin a contracting agency's termination of a contract); *Griffy's Landscape Maint. LLC v. United States*, 51 Fed. Cl. 667, 672-73 (2001) (holding that the awardee of a contract may not challenge the decision to terminate that contract by invoking the court's bid protest jurisdiction); *Davis/HRGM Joint Venture v. United States*, 50 Fed. Cl. 539, 544 (2001) (ruling that a contractor's challenge to a termination for convenience "does not fall within the express language of [28 U.S.C.] § 1491(b) because it does not relate to an interested party's objection to a solicitation, a proposed award, or an award").

[11] *See also Burnside-Ott Aviation Training Ctr. v. Dalton*, 107 F.3d. 853, 859-60 (Fed. Cir. 1997) (finding jurisdiction under the CDA over a challenge to an agency's discretionary decision to give an award fee to a contractor); *George Sollitt Constr. Co. v. United States*, 64 Fed. Cl. 229, 248 (2005) (same).

government procurements . . . ," potentially allowing protests of "every agency decision not to procure a product or service." *Int'l Genomics Consortium*, 104 Fed. Cl. at 677-78; *see also VFA, Inc. v. United States*, 118 Fed. Cl. 735, 743 (2014). That this court will not allow.

At least some of plaintiffs particularly err in characterizing the CO decision not to issue an award-term extension under H.4 as one excluding certain contractors from a supposed "competitive range" determination under FAR 15.306(c). Contrary to plaintiffs' claims, there was no competitive range determination made here, no discussions and, for that matter, none of the other features typical of a negotiated procurement here. The concept of "competitive range" envisioned under FAR 15.306(c) particularly does not encompass internal agency decisions applicable to different contracts with respect to different multiple-award contract holders. Rather, it refers to the development of a process solely intended to reduce the number of offerors – a process of source selection that did not occur here.

Not surprisingly, this case thus does not involve other typical FAR concepts like "past performance," "discussions," "disparate treatment," and other aspects of the regulatory spectrum that plaintiffs have attempted to diffuse awkwardly into this procurement case.[12] *See generally,* John Cibinic, Jr., Ralph C. Nash, Jr. & Christopher R. Yukins, *Formation of Government Contracts* 784-85, 845-58 (4th ed. 2011). There were no technical proposals here, no price proposals, nor any other form of related source-selection evaluation. *Id.* at 757-70, 937. Nor should there have been, given the agency's directives and intentions. That the regulatory terms in the FAR invoked by plaintiffs mismatch those that plaintiffs would wield in seeking to invoke this court's jurisdiction, provides strong evidence that the latter does not represent a warranted invocation of this court's jurisdiction.

Other disjointed concepts invoked by plaintiffs suffer the same fate. For example, contrary to several of plaintiffs' claims, this case does not involve so-called "down-select contracts." Performing a "down-select" is the process through which multiple contractors and/or subcontractors are eliminated, leaving a remaining contractor to fulfill the order.[13] This court has exercised bid protest jurisdiction when "the agency has entered into identical multi-award contracts that essentially involve a competition in stages to develop a new product, and ultimately to procure that product, and the protest concerns objections to the agency's actions in eliminating one of the competitors at an intermediate stage." *OTI Am., Inc. v. United States*, 68 Fed. Cl. 108, 114 (2005). But, the TOs did not involve developing or procuring a new product through stages of competition, and the award-term extension was not the ultimate procurement.

[12] *See TigerSwan, Inc. v. United States*, 110 Fed. Cl. 336, 348 (2013); *Davis/HRGM*, 50 Fed. Cl. at 545 ("Plaintiff's characterization of the contracting officer's decision to terminate the contract as violating regulations or irrational and arbitrary does not bring the claim within this Court's bid protest jurisdiction.").

[13] *See* Robert K. Huffman, "Close Encounters: Government Contracts Law Meets Patent Law at the Federal Circuit," 42 Pub. Cont. L.J. 121, 131 (2012); Karen DaPonte Thornton, "Fine-Tuning Acquisition Reform's Favorite Procurement Vehicle, the Indefinite Delivery Contract," 31 Pub. Cont. L.J. 383, 407 n.117 (2002); *see generally, Mabus v. Gen. Dynamics C4 Sys., Inc.*, 633 F.3d 1356, 1358 (Fed. Cir. 2011).

The purpose of the TOs was to procure the PCAs' performance of debt collection services starting in 2009, not to evaluate the PCAs' performance over the last five and half years just to decide which contractor(s) would receive an award-term extension. The agency was free to issue award-term extensions to all of the qualifying contractors; there was no competition or "winnowing" of the candidates required or intended by the agency. *See OTI*, 68 Fed. Cl. at 117; *see also Electro-Voice, Inc.*, 98-1 C.P.D. ¶ 23 (Comp. Gen. Jan. 15, 1998).

Having considered and reviewed the remainder of plaintiffs' jurisdictional arguments, the court does not find them persuasive.[14] Instead, the court finds that defendant and defendant-intervenors are correct in asserting that this case involves matters of contract administration, requiring the court to dismiss this case for lack of jurisdiction.[15]

## III. CONCLUSION

This court need go no farther. Based on the foregoing, it **GRANTS** defendant's and defendants-intervenors' motions to dismiss for lack of jurisdiction. The Clerk is hereby ordered to **DISMISS** plaintiffs' consolidated complaints.

**IT IS SO ORDERED.**

s/Francis M. Allegra
Francis M. Allegra
Judge

[14] The parties have disputed vigorously over whether plaintiffs have waived their jurisdictional arguments. In *Blue & Gold Fleet L.P v. United States*, the Federal Circuit held that "a party who has the opportunity to object to the terms of a government solicitation containing a patent error and fails to do so prior to the close of the bidding process waives its ability to raise the same objection afterwards in a § 1491(b) action in the Court of Federal Claims." 492 F.3d 1308, 1315 (Fed. Cir. 2007). Citing the desire to prevent contractors "from taking advantage of the government and other bidders" and to "avoid[ ] costly after-the-fact litigation," the Federal Circuit in *Blue & Gold Fleet* stated that "'[v]endors cannot sit on their rights to challenge what they believe is an unfair solicitation, roll the dice and see if they receive award." *Id*. at 1314 (quoting *Argencord Mach. & Equip., Inc. v. United States*, 68 Fed. Cl. 167, 175 n.14 (2005)); *see also Weeks Marine, Inc. v. United States*, 575 F.3d 1352, 1362–63 (Fed. Cir. 2009). The rule in *Blue & Gold Fleet* thus bars a protester from raising objections to patent errors or ambiguities apparent on the face of the solicitation. Our court has consistently applied this equitable bar as part of its bid protest review. *See, e.g., Optimization Consulting,, Inc. v. United States,* 115 Fed. Cl. 78, 94-95 (2013); *Eco Tour Adventures, Inc. v. United States*, 114 Fed. Cl. 6, 26 (2013); *Linc Gov't Servs. v. United States*, 96 Fed. Cl. 672, 697-98 (2010) (citing cases). In the court's view, application of this waiver doctrine, per the *caveat* established by the Federal Circuit in *Blue & Gold Fleet*, could easily be invoked here. But, given the other jurisdictional defects manifestly present here, the court concludes that it need not decide this point.

[15] Plaintiffs may have a basis for proceeding with CDA claims here, provided the statutory prerequisites are met. *See* 41 U.S.C. § 7103. But, that issue is obviously beyond the scope of the complaints here.