# In the United States Court of Federal Claims

Nos. 15-207, 15-242, 15-249, 15-265
(consolidated)

(Filed Under Seal: March 6, 2018)

(Reissued for Publication: March 14, 2018)[1]

*********************************** *
                                    *
COAST PROFESSIONAL, INC., NATIONAL  *
RECOVERIES, INC., ENTERPRISE        *
RECOVERY SYSTEMS, INC., and PIONEER *
CREDIT RECOVERY, INC.,              *
                                    *
                 Plaintiffs,        *
                                    *
v.                                  *
                                    *
THE UNITED STATES,                  *          Agency's Voluntary Corrective
                                    *          Action; RCFC 12(b)(1) and
                 Defendant,         *          12(b)(6) Motion to Dismiss;
                                    *          Mootness; Bid Preparation and
and                                 *          Proposal Costs.
                                    *
FINANCIAL MANAGEMENT SYSTEMS,       *
INC., ACCOUNT CONTROL TECHNOLOGY,   *
INC., CONTINENTAL SERVICE GROUP,    *
INC., WINDHAM PROFESSIONALS, INC.,  *
and GC SERVICES LIMITED PARTNERSHIP,*
                                    *
                 Defendant-Intervenors. *
                                    *
*********************************** *

---

[1] The Court issued this decision under seal on March 6, 2018 and invited the parties to submit proposed redactions of any proprietary, confidential, or other protected information on or before March 13, 2018. None of the parties proposed any redactions. Thus, the Court reissues the opinion in full. One correction, regarding the filing date of Defendant's motion to dismiss (Dkt. No. 213), has been made. The motion to dismiss was filed in February 2017.

*Megan C. Connor*, with whom were *Pamela J. Mazza*, *Patrick T. Rothwell*, and *Julia Di Vito*, PilieroMazza PLLC, Washington, D.C., for Plaintiff Coast Professional, Inc.

*Edward T. DeLisle*, Cohen Seglias Pallas Greenhall & Furman, Philadelphia, Pennsylvania, for Plaintiff National Recoveries, Inc.

*Daniel R. Forman*, with whom were *Peter J. Eyre*, *James G. Peyster*, and *Robert J. Sneckenberg*, Crowell & Moring LLP, Washington, D.C., for Plaintiff Enterprise Recovery Systems, Inc.
*Jonathan D. Shaffer*, with whom were *Mary Pat Buckenmeyer* and *Sean K. Griffin*, Smith Pachter McWorther PLC, Tysons Corner, Virginia, for Plaintiff Pioneer Credit Recovery, Inc.

*Michael D. Snyder*, with whom were *Chad A. Readler*, Acting Assistant Attorney General, *Robert E. Kirschman, Jr.*, Director, *Patricia M. McCarthy*, Assistant Director, *Jana Moses*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, D.C., as well as *Jose Otero* and *Sarah Falk*, General Attorneys, Office of General Counsel, U.S. Department of Education, for Defendant.

*Jason A. Levine*, with whom was *David R. Johnson*, Vinson & Elkins LLP, Washington, D.C., for Defendant-Intervenor Financial Management Systems, Corp.

*Benjamin G. Chew*, with whom was *Rory E. Adams*, Manatt, Phelps & Phillips, Washington, D.C., for Defendant-Intervenor Account Control Technology, Inc.

*Edward H. Meyers*, with whom was *Rebecca R. Anzidei*, Stein, Mitchell, Cipollone, Beato & Missner LLP, Washington, D.C., for Defendant-Intervenor Continental Service Group, Inc.

*David T. Ralston, Jr.*, with whom was *Frank S. Murray,* Foley & Lardner LLP, Washington, D.C., for Defendant-Intervenor Windham Professionals, Inc.

*Stephen E. Ruscus*, Morgan Lewis & Bockius LLP, Washington, D.C., for Defendant-Intervenor GC Services Limited Partnership.

*Jeffrey M. Chiow*, with whom were *Neil H. O'Donnell* and *Lucas T. Hanback*, Rogers Joseph O'Donnell, P.C., Washington, D.C., for The CBE Group, Inc., Amicus Curiae.

*Paul M. Honigberg*, with whom were *Albert B. Krachman*, *Kendra P. Norwood*, and *Harrison H. Kang*, Blank Rome LLP, Washington, D.C., for West Asset Management, Inc., Amicus Curiae.

<u>OPINION AND ORDER</u>

WHEELER, Judge.

Consolidated Plaintiffs Coast Professional, Inc. ("Coast"), National Recoveries, Inc. ("NRI"), Enterprise Recovery Systems, Inc. ("Enterprise"[2]), and Pioneer Credit Recovery, Inc. ("Pioneer") (collectively, "Plaintiffs") filed this post-award bid protest following a series of actions taken by the Department of Education ("Education" or "the Agency"). Currently before the Court is Defendant's renewed motion to dismiss Plaintiffs' amended complaints. For the reasons stated below, the Court GRANTS Defendant's renewed motion to dismiss.

<u>Background</u>

A.   <u>Education's 2008 Solicitation and Award Term Extensions</u>

Since 1981, Education has contracted with private collection agencies ("PCAs") for collection and administrative resolution services on defaulted student loans. See <u>Coast Professional, Inc. v. United States, Fin. Mgmt. Sys., Inc.</u>, 120 Fed. Cl. 727 (2015), <u>vacated</u>, 828 F.3d 1349 (Fed. Cir. 2016); <u>see also</u> <u>Lockhart v. United States</u>, 546 U.S. 142, 144 (2005). In May 2008, Education issued a Request for Proposals under Solicitation ED-08-R-0052 for such services. The competition was limited to PCAs that already held General Services Administration ("GSA") Financial and Business Solution contracts. In April 2009, Education selected 22 PCAs that had submitted proposals in response to the solicitation and issued 22 task orders ("2009 Task Orders"). The task orders contained a base period of performance and option periods. The 2009 Task Orders also had practically identical terms and conditions, including section H.4, which granted Education the discretion to issue award-term extensions ("ATEs") to PCAs with a Competitive Performance and Continuous Surveillance score ("CPCS rating") of 85 or more.[3] Each of the Plaintiffs in this case achieved a CPCS rating of at least 85.

In December 2014, after the Government Accountability Office recommended that Education improve oversight of its collection agencies, the Agency's Federal Student Aid ("FSA") began conducting focused reviews, or audits, of the 22 aforementioned PCAs to determine potential violations of consumer protection laws, particularly the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, and the Unfair, Deceptive, or Abusive Acts or Practices statute, 12 U.S.C. § 5536. During the audit, FSA calculated an error rate for each PCA. As a result of Plaintiffs' higher error rates during this audit, in February 2015, Education decided that Plaintiffs would not receive ATE task orders and their 2009 Task

---

[2] During the course of litigation, Enterprise Recovery Systems, Inc. changed its corporate name to Alltran Education, Inc. This opinion refers to the entity as "Enterprise."

[3] <u>Coast</u>, 120 Fed. Cl. at 731-32, outlines the CPCS scores in greater detail. The specific information is not relevant to the disposition of this case and is therefore not repeated in this opinion.

Orders would be allowed to expire.  Education made this determination despite Plaintiffs' high performance and CPCS rankings.

B.   Initial Filing and Federal Circuit Decision

Following this determination, in March 2015, each plaintiff filed a separate action in this Court, challenging Education's ATE decision.  The Court consolidated Plaintiffs' cases, and the five contractors who received ATEs, Financial Management Systems, Inc., Account Control Technology, Inc., Continental Service Group, Inc., and Windham Professionals, Inc., and GC Services Limited Partnership, filed motions to intervene as defendant-intervenors.  CBE Group, Inc. and West Asset Management, Inc., 2009 Task Order awardees, filed complaints in this Court and were admitted as amici.  Following briefing and oral argument, the Court dismissed Plaintiffs' complaints for lack of subject matter jurisdiction.  Coast, 120 Fed. Cl. at 727.  Pioneer and Enterprise appealed this decision to the United States Court of Appeals for the Federal Circuit.  Pending appeal, the case was reassigned from Judge Francis M. Allegra to Chief Judge Susan G. Braden.

On appeal, the Federal Circuit vacated this Court's judgment and remanded the matter, holding that Education's awarding ATEs to some of the 22 PCAs and denying others was indeed within the Court's bid protest jurisdiction under 28 U.S.C. § 1491(b).  Coast, 828 F.3d at 1356-57.

On remand, Plaintiffs filed amended complaints, arguing that Education's decision to rely on the results of the focused review in making ATE determinations was unreasonable, arbitrary, and capricious.  Amended Complaints, Dkt. Nos. 198, 200, 203, 206.  Plaintiffs also submitted motions for judgment on the administrative record.  Dkt. Nos. 199, 202, 204, 208.

C.   Corrective Action

In February 2017, Defendant filed a motion to dismiss pursuant to RCFC 12(b)(1) and 12(b)(6), asserting that Plaintiffs' amended complaints were moot in light of the Agency's proposed corrective action.  Defendant's Motion to Dismiss, Dkt. No. 213.  This motion included a declaration from Education contracting officer ("CO") Patty Queen-Harper.  Dkt. No. 213, Exhibit A (Declaration of Patty Queen Harper, dated Feb. 22, 2017) ("Decl.").  In this declaration, the CO explained that the decision not to issue ATEs to Plaintiffs would be reconsidered and the results of the 2015 focused review would be excluded.  Decl. ¶ 5.  The CO also noted that "any task order awarded as a result of the reevaluation shall incorporate the same material terms as the 2015 ATE task orders, including, but not limited to, payment terms, allocations, . . ." Id. at ¶ 5(e).  Plaintiffs filed oppositions to Defendant's motion to dismiss; the Court then temporarily denied the motion to dismiss and stayed the case pending Education's completion of the corrective action.  Dkt. No. 228.

On April 28, 2017, Defendant informed the Court that Education had completed the corrective action reevaluation.  Dkt. No. 231.  As a result of corrective action, the Agency awarded Enterprise and Pioneer ATEs and offered Coast and NRI the option to either receive ATEs or to continue performance under separate 2014 small business contracts. Enterprise and Pioneer accepted the ATEs, and Coast and NRI chose to continue performance under their set-aside contracts.

On November 11, 2017, this case was reassigned to Judge Thomas C. Wheeler; the Court held a hearing on January 9, 2018 to determine the current status of the case. Following this hearing, Defendant filed a renewed motion to dismiss on January 31, 2018. Renewed Motion to Dismiss, Dkt. No. 244.

In its renewed motion to dismiss, Defendant argues that corrective action is now complete and therefore moots Plaintiffs' amended complaints.  Id. at 7.  Defendant also asserts that Plaintiffs' claims for costs and attorneys' fees should be dismissed pursuant to RCFC 12(b)(6).  Id. at 12.  On February 21, 2018, Plaintiffs NRI, Coast, and Pioneer filed oppositions to Defendant's renewed motion.  Dkt. Nos. 246, 247, 248.  On February 21, 2018, Plaintiff Enterprise filed a notice of voluntary dismissal.  Dkt. No. 249.  Plaintiffs' current arguments are explained below.

D.      Current Claims

Plaintiffs' requests are generally similar in that their amended complaints (1) demand ATE awards in accordance with clause H.4 of the 2009 task orders; (2) assert that the focused review and resulting decision not to issue 2015 ATEs to Plaintiffs were arbitrary and capricious; and (3) request bid preparation and proposal costs and attorneys' fees.  See Coast Amended Compl. at 9; NRI Amended Compl. at 35; Pioneer Amended Compl. at 22-23.  However, as Education's corrective action affected Plaintiffs Pioneer, Coast, and NRI differently, each party's claims are outlined separately below.

1.      Pioneer's Claims

Despite receiving an ATE as a result of Education's corrective action, Pioneer asserts that its claims are not moot, because the corrective action does not provide a full remedy.  Pioneer Response, Dkt. No. 248 at 11.  In its amended complaint, Pioneer seeks an ATE award commensurate with 2015 ATEs.  Pioneer Amended Compl., Dkt. No. 200 at 23.  Pioneer explains that, as a result of corrective action, it has only received 160,000 account transfers, compared to the 600,000 it would have received had it been a 2015 ATE recipient. Pioneer Response at 2-3.  Additionally, Pioneer requests bid preparation and proposal costs as well as attorneys' fees.

## 2. 2014 Small Business Contract Regarding Coast and NRI's Claims

Coast and NRI object to Education's corrective action, claiming they should not have to choose between an ATE and their separate, small business contracts. Dkt. Nos. 246, 247, respectively.  On September 30, 2014, Coast and NRI were two of the PCAs awarded a debt collection contract specific to small businesses; performance under this contract did not begin until late 2015.  The 2014 small business contract contained section C.3.40 titled "Organizational Limit on Contracts."   The provision placed a contract limitation on small business contract holders.  In 2014, the section read:

> No organization, including any affiliate, division, or parent of the organization, may receive or hold *more than one contract resulting from solicitations ED-FSA-13-R-0006 (small business set aside) and ED-FSA-13-R-0010 for Default Collection Services*.[4]

See Dkt. No. 232, Exhibit 1 at 57 (emphasis added).  Education made multiple modifications to the small business contract throughout 2015.  Coast Response, Dkt. No. 247 at 5-6.  In October 2015, Education issued a modification that affected Coast and NRI in that it included clause C.3.431(1) titled "Organizational Limit on Contracts."  In 2015, section C.3.431(1) read:

> No organization, including any affiliate, division, or parent of the organization, may receive or hold *more than one prime contract for default collections services with FSA*.

See Dkt. No. 232, Exhibit 2 at 66 (emphasis added).  Coast and NRI emphasize that this change was not highlighted or identified for the small businesses, suggesting its addition was improper.  The parties also assert that the 2014 clause would have allowed them to hold both ATEs and small business contracts.  See Dkt. Nos. 246, 247.

### a. Coast's Arguments

In particular, Coast contends that its claims are not moot, because if Coast had been a 2015 ATE recipient, it would have been permitted to hold both an ATE and a 2014 small business contract concurrently, based on the latter's language.  Coast Response at 8-9. Coast further asserts its claims for bid preparation and proposal costs.

---

[4] ED-FSA-13-R-0010 is a solicitation that was later canceled by Education.  See NRI Response at 13 (explaining the solicitation).

b.  NRI's Arguments

Describing its option between an ATE and its 2014 small business contract as a "quintessential Hobbesian Choice," NRI alleges that Education's corrective action is not rationally related to the defect to be corrected as it does not address the harm done to NRI. NRI Response, Dkt. No. 246 at 14.  NRI also questions the timing of the additional contract limitation language, as it was added after the current protests were filed with the Court.  Id. at 19.  Additionally, NRI seeks to recover bid preparation and proposal costs as well as attorneys' fees.

Discussion

The Tucker Act grants this Court subject matter jurisdiction over bid protests.  28 U.S.C. § 1491(b)(1) (2012).  In a bid protest, the Court reviews agency decisions—including decisions pertaining to corrective action—pursuant to the standards set out in the Administrative Procedure Act ("APA").  28 U.S.C. § 1491(b)(4) (2012); 5 U.S.C. § 706 (2012).  Under the APA, this Court shall set aside an agency action if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A) (2012); see Banknote Corp. of Am., Inc. v. United States, 365 F.3d 1345, 1350–51 (Fed. Cir. 2004).  An agency's decision does not violate the APA if the agency "provided a coherent and reasonable explanation of its exercise of discretion."  Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1332–33 (Fed. Cir. 2001).  Further, an agency must articulate a "rational connection between the facts found and the choice made."  Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983) (citation omitted).  The Court's review is "highly deferential" to the agency as long as the agency has rationally explained its award decision.  Bannum, Inc. v. United States, 91 Fed. Cl. 160, 169–70 (2009).

Even if the agency acted without a rational basis, the Court cannot grant relief unless the agency's action prejudiced the protestor.  Bannum, Inc. v. United States, 404 F.3d 1346, 1351 (Fed. Cir. 2005).  Erroneous agency action prejudices a protestor if, but for the agency's error, there was a "substantial chance" that the agency would have awarded the contract to the protestor.  Alfa Laval Separation, Inc. v. United States, 175 F.3d 1365, 1367 (Fed. Cir. 1999) (internal citation omitted); see also Bannum, 404 F.3d at 1353.

Therefore, to prevail, each plaintiff would be required to show that there was a defect in the issuance of the 2015 ATEs, and there was a substantial chance that it would have received the 2015 ATE but for Education's conduct.  As corrective action has been taken, however, the Court must determine if the corrective action was arbitrary or capricious, and Education must show that the corrective action was rationally related to the alleged defect to be corrected.

7

A.      The Court Lacks Subject Matter Jurisdiction Over Plaintiffs' Claims
        Concerning the 2015 ATEs.

        1.  Standard of Review

Courts have no subject matter jurisdiction over moot claims.  See CW Gov't Travel,
Inc. v. United States, 46 Fed. Cl. 554, 556 (2000) (citing North Carolina v. Rice, 404 U.S.
244, 246 (1971)).  Therefore, the Court's analysis of the Government's mootness argument
is substantially the same as it would be for a motion to dismiss for lack of subject matter
jurisdiction under RCFC 12(b)(1).  See Tech. Innovation, Inc. v. United States, 93 Fed. Cl.
276, 278 (2010).  When a defendant files a motion under RCFC 12(b)(1), the Court must
"assume all factual allegations to be true and . . . draw all reasonable inferences in
plaintiff's favor."  Wurst v. United States, 111 Fed. Cl. 683, 685 (2013) (quoting Henke v.
United States, 60 F.3d 795, 797 (Fed. Cir. 1995)).  However, a plaintiff must establish that
jurisdiction exists "by a preponderance of the evidence."  Id. (citing Reynolds v. Army &
Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988)).

        2.  Education's Corrective Action Has Mooted Plaintiffs' Primary
            Allegations.

Although mootness is part of the "case or controversy" requirement in Article III of
the United States Constitution, see Gerdau Ameristeel Corp. v. United States, 519 F.3d
1336, 1340 (Fed. Cir. 2008), the doctrine also applies in this Article I Court.  See
Brookfield Relocation Inc. v. United States, 113 Fed. Cl. 74, 77 (2013).  A case should be
dismissed as moot if "the issues presented are no longer 'live' or the parties lack a legally
cognizable interest in the outcome."  Rice Servs., Ltd. v. United States, 405 F.3d 1017,
1019 n.3 (Fed. Cir. 2005) (citation omitted).  The parties lack such an interest if the
defendant's alleged act will not recur, and if intervening events have "completely and
irrevocably eradicated the effects of the alleged violation."  CW Gov't Travel, 46 Fed. Cl.
at 557 (quoting Los Angeles v. Davis, 440 U.S. 625, 631 (1979)).

For example, bid protest actions brought pursuant to this Court's jurisdiction under
28 U.S.C. § 1491(b)(1) may become moot if the government takes corrective action by
canceling the challenged procurement and reopening the bidding process.  See, e.g.,
Savantage Fin. Servs., Inc. v. United States, 118 Fed. Cl. 487, 491 (2014) (finding that
defendant's corrective action mooted plaintiff's claim in bid protest).

Here, the alleged defect in the 2015 ATE awards was the Government's use of the
focused review results to issue task orders.  Education's voluntary corrective action
reevaluated each plaintiff and did not consider the focus review results— the alleged defect
of the initial evaluation— in making determinations.  As a result of corrective action, each
plaintiff was offered an ATE.  In considering the mootness standard, the alleged defective
act cannot recur, and the corrective action eradicates the effects of the claimed violation,

because Plaintiffs were evaluated for ATEs without consideration of the audit results.  By directly addressing the alleged wrong in its corrective action, Education clearly showed a rational connection between the protest and the action.  Further, in the Declaration, the CO explained the corrective action in detail, outlining the terms and focusing on the crux of Plaintiffs' concerns regarding the 2015 ATEs.  As such, Education's voluntary corrective action is rationally related to the alleged defect and is not arbitrary or capricious.  Education's corrective action eliminates Plaintiffs' concerns regarding the 2015 ATEs, thereby rendering them moot.

While Pioneer claims that the corrective action does not provide a full remedy, comparing the amount of debt-collection accounts it has received to the amount of work the other PCAs have under the 2015 ATEs, this Court does not have jurisdiction to address this matter.  Entitlement to a certain number of accounts based on a contract is not in the Court's bid protest purview, and instead is a contract administration matter under the Contracts Disputes Act, 41 U.S.C. §§ 7101-09.

Similarly, Coast and NRI's arguments regarding their requirement to choose between work under a new ATE or existing small business contracts do not devalue Education's corrective action.  First, as the Government addresses in its renewed motion to dismiss, Coast and NRI assented to the revised language in the small business contract.  Renewed Motion to Dismiss at 10.  Therefore, Coast and NRI are bound to the 2015 provision, which clearly states the parties cannot hold more than one contract for debt collection services with FSA.  Second, Education's practice of distributing accounts based on what the PCAs or small businesses are "capable of handling" is not within the Court's jurisdiction.  Dkt. No. 222, Exhibit A at ¶¶8-9.  While being allowed to hold both ATEs and small business contracts could potentially result in the parties possessing more accounts, this outcome is not guaranteed.  Such a dispute would also be a contract administration matter, which is not within the Court's 28 U.S.C. § 1491(b)(2) bid protest jurisdiction.

In sum, Education's corrective action eliminates Plaintiffs' concerns regarding the issuance of the 2015 ATEs and makes these claims moot.

B.    Plaintiffs Are Not Entitled to Bid Preparation and Proposal Costs, or Attorneys' Fees.

Dismissal is warranted under RCFC 12(b)(6) "when the facts asserted by the claimant do not entitle him to a legal remedy." Lindsay v. United States, 295 F.3d 1252, 1257 (Fed. Cir. 2002).  "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is warranted under RCFC 12(b)(6).  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 558 (2007).  To survive a motion to dismiss under this rule, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555.  While a

complaint is not required to contain detailed factual allegations, it must provide "enough facts to state a claim for relief that is plausible on its face." Id. at 570. In order to meet the requirement of facial plausibility, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

Here, Plaintiffs request additional costs, yet they have not shown that they are entitled to receive such costs. While the Tucker Act empowers the Court to "award any relief that the [C]ourt considers proper . . .," the Court does not deem such relief necessary in this case. See 28 U.S.C. § 1492(b)(2).

Regarding bid preparation and proposal costs, both Plaintiff Coast and the Government cite Beta Analytics International, Inc. v United States, 75 Fed. Cl. 155, 159 (2007). Beta Analytics holds that an agency's "reevaluation restores to a [protestor] . . . its substantial chance to receive the contract award," and such reevaluation [t]ypically . . . eliminate[s] the basis for an award of bid preparation and proposal costs, as the investment in the proposal is no longer a needless expense . . . [b]ut when, as here, performance of a contract has begun, or reevaluation is not otherwise practical, bid preparation and proposal costs should be awarded." Id.. While performance of the contract has begun here, there is no evidence in the record to show that bid preparation or proposal costs were required in connection with the ATEs in question. Further, the reevaluation completed as part of Education's corrective action addressed Plaintiffs' main concerns and does not appear impractical in any way. Plaintiff Pioneer asserts that when an agency's makes an arbitrary and capricious award, bid preparation costs are warranted. See Dkt. No. 248, citing Red River Holdings, LLC v. United States, 87 Fed. Cl. 768, 792 (2009). The Court has never made such a finding regarding Education's 2015 ATEs, as the Agency undertook corrective action. In fact, the action is complete and directly addresses Plaintiffs' complaints; the Court finds that the action is rational, not arbitrary and capricious. Bid preparation and proposal costs are not appropriate here.

Addressing attorneys' fees, under the Equal Access to Justice Act, a court may award attorneys' fees or expenses to a prevailing party if specific requirements are met. 28 U.S.C. § 2412. The Federal Circuit has held that when the Court dismisses a protest due to a voluntary corrective action, the protestor is not a prevailing party. Rice Services, Ltd. v. United States, 405 F.3d 1017, 1027 (Fed. Cir. 2005). Education's voluntary corrective action moots Plaintiffs' main claims, preventing them from being eligible as prevailing parties under the Equal Access to Justice Act. Therefore, Plaintiffs' claims for attorneys' fees are dismissed under RCFC 12(b)(6).

## Conclusion

For the reasons stated above, the Defendant's renewed motion to dismiss is GRANTED. Plaintiffs' motions for judgment on the administrative record are DENIED.

The Clerk shall enter judgment in favor of the Government.   No costs.   Plaintiff Enterprise's amended complaint is dismissed without prejudice.

IT IS SO ORDERED.

s/Thomas C. Wheeler
THOMAS C. WHEELER
Judge